IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DADRAIN BANKS**                                                                                   **PLAINTIFF**

V.                                 **CASE NO. 4:19-CV-291-BD**

**PULASKI COUNTY
SHERIFF DEPARTMENT,** *et al.*                                                    **DEFENDANTS**

## ORDER

Plaintiff Dadrain Banks filed this civil rights lawsuit claiming that he was subjected to unconstitutional conditions of confinement at the Pulaski County Detention Facility (Detention Facility). Specifically, he alleged that Defendants Vance, Waters, and Scott held him in unsanitary cells that he was not allowed to clean.[1] (Doc. Nos. 1, 14) In his amended complaint, Mr. Banks alleged that he was held in cells that contained feces, urine, and stains on the walls, floor, and ceiling. (Doc. No. 14, p.1)

Defendants have filed a motion for summary judgment, contending that Mr. Banks was not subjected to unconstitutional conditions of confinement; that they are entitled to qualified immunity; and, that there is no unconstitutional policy or practice at the Detention Facility that allows for unsanitary cells. (Doc. No. 115) Mr. Banks has responded to the motion for summary judgment, and it is ready for decision. (Doc. No. 120)

**I.**      **Standard**

---

[1] All other claims and Defendants have been dismissed. (Doc. Nos. 37, 54)

Summary judgment means that the court rules in favor of a party without the need for a trial. The Defendants in this case are entitled to summary judgment only if the evidence, viewed in the light most favorable to Mr. Banks, shows that there is no genuine dispute as to any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986).

## II. Facts

Mr. Banks was arrested and booked into the Detention Facility on February 2, 2019. Throughout the spring of 2019 he repeatedly submitted grievances complaining about unsanitary conditions in the cells and showers.

Mr. Banks was first assigned to cell T-322. (Doc. Nos. 117-2, p.1; 117-3, p.18) On February 3, he submitted a grievance complaining that feces and urine in Unit-T cells were causing a foul smell. (Doc. No. 117-3, p.1) In his grievance, Mr. Banks complained that cells were not properly cleaned before new inmates were placed in cells, and he suggested that cells and showers be pressure-washed. Rather than addressing the merits of the issues Mr. Banks raised, however, Sergeant Brawley rejected the grievance because it contained foul language.[2] (Doc. No. 117-3, p.2)

Mr. Banks filed another grievance on February 5, complaining that inmates had

---

[2] Mr. Banks used the word "shit" to describe the substance on the cell walls in Unit-T.

rubbed feces and urine on cell floors and walls in Unit-T and had urinated in the showers. He also reported a foul odor in both Unit-T and Unit-U. (Doc. No. 117-3, p.3) Mr. Banks requested that both Unit-T and Unit-U cells and showers be pressure-washed. (Doc. No. 117-3, p.3) Again, Sergeant Brawley rejected this grievance because of vulgar language, and he did not address the merits of the complaints.[3] (Doc. No. 117-3, p.4)

On February 19, Mr. Banks submitted a grievance complaining that inmates in the lock-down unit were urinating and defecating in the showers. (Doc. No. 117-3, p.5) This grievance was inexplicably stamped as "non-grievable." (Doc. No. 117-3, p.5) Sergeant Brawley, however, eventually wrote a response indicating that staff would clean the showers and other areas of the unit.[4] (Doc. No. 117-3, pp.5-6) Contrary to allegations in his amended complaint, Mr. Banks did acknowledge in a grievance that, at some point between the day he was placed in cell T-322 (February 2) and the day he was moved to a different cell (March 23), he was able to clean cell T-322. (Doc. No. 117-3, p. 18)

On March 23, Mr. Banks submitted a grievance complaining that he was moved from T-322 to T-312, a cell where there was vomit, urine, and feces. (Doc. No. 117-3, p.7) In his April 1 response to the grievance, Sergeant Brawley wrote that the problem

---

[3] Presumably the foul language the deputy referred to was Mr. Banks's use of the words "shit" and "piss" to describe substances in the cells and showers.

[4] The Court cannot decipher the date Sergeant Brawley wrote this response. (Doc. No. 117-3, p.6)

had been addressed.[5] (Doc. No. 117-3, p.8)

On March 24, Mr. Banks again complained in a grievance that cell T-312 contained vomit, urine, and feces; and, he further complained that he had not been allowed to clean the cell. (Doc. No. 117-3, p.9) Sergeant Brawley responded that the matter was being investigated. (Doc. No. 117-3, p.10)

On March 24, Mr. Banks again complained about vomit, urine, and feces in his new cell, T-312. (Doc. No. 117-3, p.11) Sergeant Brawley responded that Mr. Banks's concerns had been conveyed to the shift supervisor. (Doc. No. 117-3, p.12) At 8:00 p.m. on the same day, officials discovered water in Mr. Banks's cell. (Doc. No. 117-4) Mr. Banks received disciplinary charges for flooding his cell. He argued that he was trying to wash the walls with soap and water because the deputies would not allow him to clean the cell. (Doc. No. 117-3, pp.16-23) After an investigation, officials determined that Mr. Banks had intentionally flooded his cell. (Doc. No. 117-4)

On March 27, Mr. Banks complained that his new cell (T-310) had spots, stains, and a foul odor. (Doc. No. 117-3, p.13) He asked that the cell be cleaned, disinfected, and painted. (Doc. No. 117-3, p.13) In response, Sergeant Brawley wrote that the matter was being investigated. (Doc. No. 117-3, p.14)

On April 17, Mr. Banks submitted a grievance complaining about urine and feces

---

[5] The Defendants have not provided evidence to explain who was investigating or how the problems were being addressed.

inside the showers. (Doc. No. 117-3, p.24) Sergeant Brawley wrote that the issue had been reported to Environmental Services and the showers would be cleaned. (Doc. No. 117-3, p.25) On the same day, Mr. Banks complained that he had been moved to cell U-420, which was covered with hair and drawings. (Doc. No. 117-3, p.26) In response, Sergeant Brawley wrote, "[i]t is unfortunate that there are inmates that mess up things for others herete [sic]. You can clean the walls. Just ask the unit deputy for something to clean with." (Doc. No. 117-3, p.27)

On May 3, Mr. Banks complained he had been moved to a cell (U-304) that had feces on the doors and walls. (Doc. No. 117-3, p.28) On May 9, he was charged with a major disciplinary for flooding cell U-304. (Doc. No. 117-4, pp.8-12)

According to the Detention Facility policy, inmates are responsible for cleaning inmate living areas, including cells, dayrooms, and bathroom facilities. (Doc. Nos. 117-1, 117-5) The policy states that deputies will provide inmates with cleaning supplies and materials to assist them in cleaning their housing units and will supervise the inmates to ensure the tasks are completed. (Doc. Nos. 117-1, 117-5)

### III. Discussion

Because Mr. Banks was a pretrial detainee at the time of the alleged constitutional violation, his claims are governed by the due process clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979); *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 905 (8th Cir 2020); *Morris v. Zefferi*, 603 F.3d 805, 809 (8th Cir.

2010); *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996). A pretrial detainee can be held and subjected to conditions and restrictions if the conditions and restrictions do not amount to punishment and do not otherwise violate the constitution. *Stearns*, 957 F.3d at 907 (citing *Bell v. Wolfish*, 441 U.S. at 536-37). "[T]he length of time a prisoner is subjected to harsh conditions is a critical factor" in determining whether conditions run afoul of constitutional standards. *Stearns*, 957 F.3d at 909 (quoting *Smith v. Copeland,* 87 F.3d at 269).

Mr. Banks alleges that he was continuously held in unsanitary cells and was forced to use unsanitary showers from February 2, 2019 until at least May 3, 2019. According to Mr. Banks, when he attempted to clean one of his cells, he was given a disciplinary, presumably for flooding the cell. Mr. Banks acknowledges that he was able to clean the cell where he was held from February 2 until March 23. There is no evidence in this record to indicate that Mr. Banks was provided any cleaning supplies; or, if he was provided supplies, how long he was in an unsanitary cell before he was provided cleaning supplies.

The Defendants have not offered critical information in support of their motion: the dates cells and showers were cleaned during Mr. Banks's stay; who cleaned cells and showers, if they were cleaned; what measures they took to enable Mr. Banks to clean his cells; and whether Mr. Banks requested cleaning supplies. It is not enough to submit the policy of cleaning cells. For summary judgment, Defendants must come forward with

evidence to refute Mr. Banks's claims that his cells were unsanitary, and he was not given means to clean his cells.

Defendants contend that they did not have notice of unsanitary conditions in Mr. Banks's cells. Mr. Banks alleges, however, that Defendants Vance, Waters, and Scott placed him in obviously unsanitary cells in Unit-T and Unit-U; and they necessarily would have observed the condition of those cells.[6] Furthermore, the multiple grievances Defendants attached to their motion establish notice.

Defendants also argue that Mr. Banks did not make it clear that his first cell, T-322, was covered in feces and urine. Again, the argument is not well taken. Mr. Banks repeatedly complained throughout his Detention Center stay about his placement in cells covered in vomit, feces, and urine. He complained in his grievances that the *cells* in Unit-T had a foul odor from inmates smearing urine and feces on the wall. Mr. Banks's cell would have been included.

The Defendants do not provide any evidence to dispute Mr. Banks's claims about the condition of the cells; nor do they provide evidence that Mr. Banks was provided cleaning supplies. Instead, they argue that Mr. Banks does not allege harm as a result of the conditions. That argument misses the mark. Placing an inmate in a cell with other inmates' urine and feces for three months, without providing cleaning supplies is a

---

[6] Defendants Vance and Scott, however, have now been dismissed pursuant to Mr. Banks's motion to dismiss. (Doc. No. 170)

violation of the constitution, regardless of whether the unconstitutional conditions caused physical injury. See, *e.g.*, *Taylor v. Riojas*, 592 U.S. __, 141 S.Ct. 52 (2020) (inmate held for four days in a cell covered in feces, then to frigidly cold cell with raw sewage and no bedding or clothing for two days violated the Eighth Amendment; and officers were not entitled to qualified immunity.)

This is not to say that Mr. Banks was held in unconstitutional conditions of confinement at the Pulaski County Regional Detention Facility. It is simply to say that the Defendants have not come forward with evidence to support their motion for summary judgment. As set out above, the exhibits Defendants attach to their motion include no evidence about the condition of the cells or steps taken to clean cells during Mr. Banks's stay. Thus, based on this record, there are disputed material facts.

On March 12, 2021, Mr. Banks filed a motion to dismiss "female staff members" from this lawsuit as well as from several other of his pending lawsuits. (Doc. No. 170) He specifically names the female Defendants whom he wishes to dismiss. None of them are defendants in this lawsuit; yet he also states that he "[does] not have any other female staff members['] names mentioned in [his] claims." (Doc. No. 70, p.3) The only female Defendants named in this case are Brittany Vance and Cigi Scott. Even though Mr. Banks did not include Ms. Vance or Ms. Scott in the list of Defendants he wished to dismiss, it appears that he intended to include them, given his statement that no female staff members were included in his claims.

## IV. Conclusion

Defendants' motion for summary judgment (Doc. No. 115) is DENIED, without prejudice. Mr. Banks's motion to dismiss Defendants Vance and Scott (Doc. No. 170) is GRANTED, and they are dismissed, without prejudice.

IT IS SO ORDERED, this 24th day of March, 2021.

_____
UNITED STATES MAGISTRATE JUDGE