IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DADRAIN BANKS**                                                                                **PLAINTIFF**

**VS.**                         **NO. 4:19-CV-00291-ERE**

**ANTONIO WATERS**                                                      **DEFENDANT**

## ORDER

Pending before the Court is Defendant Antonio Waters' motion for summary judgment. *Doc. 196*. For the reasons set out below, the Court finds that Mr. Waters is entitled to judgment as a matter of law.

**I.**     **Background**

Mr. Banks filed this civil rights lawsuit alleging that, while he was held at the Pulaski County Detention Facility (PCDF), Defendants Vance, Waters, and Scott held him in unsanitary cells that he was not allowed to clean. *Docs. 1, 14*. Mr. Banks alleges that the cells contained feces, urine, and stains all over the walls, floor, and ceiling. *Doc. 14, p. 1-2*.

The Court previously dismissed Mr. Banks' claims against Defendants Vance and Scott, leaving Mr. Waters as the sole remaining Defendant. *Doc. 171*.

Mr. Waters has now filed a motion for summary judgment arguing that Mr. Banks was not subjected to unconstitutional conditions of confinement and he is entitled to qualified immunity. The Court gave Mr. Banks several opportunities to file a response opposing the motion. *Docs. 199, 205, 207*. However, he has not filed

a response and the time to do so has passed. The Court will not delay further ruling on the pending motion for summary judgment.[1]

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if – but only if – the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if - but only if - the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017). Because Mr. Waters is the moving party, the Court will construe any disputed facts in a light favorable to Mr. Banks.

---

[1] On June 14, 2021, the Court reopened summary judgment after the bench trial scheduled for June 15, 2021 was continued at Mr. Banks' request. See *Docs. 189 (Order continuing bench trial) & 190 (minute entry)*.

B.    **Facts Without Material Dispute**

On February 2, 2019, Mr. Banks was arrested and booked into the PCDF and placed in cell T-322, which he claims was "nasty." *Docs. 198-2, 198-3 at p. 1*.

On February 3, 2019, Mr. Banks submitted a grievance complaining that the cells in Unit-T had a foul smell from inmates rubbing feces on the wall and urinating in their cells. *Doc. 198-3 at p. 1*. He also complained that the cells were not properly cleaned before inmates were placed in cells. According to Mr. Banks, the cells and the showers need to be pressure washed. Rather than address the issue, the grievance officer rejected the grievance for containing foul language.[2] *Id at p. 2*.

On February 5, 2019, Mr. Banks filed another grievance complaining that inmates rubbed feces and urine on cell floors and walls in Unit-T, inmates urinated in the showers, and there was a foul odor in both Unit-T and Unit-U. *Id. at p. 3*. Mr. Banks asked that both Unit-T and Unit-U cells and showers be pressure washed. *Id*. Again, the grievance was rejected for the use of vulgar language and did not address the issue.[3] *Id. at p. 4*.

On February 19. 2019, Mr. Banks submitted a grievance complaining that inmates in the lock down unit were urinating and defecating inside the showers. *Id*.

---

[2] Presumably the foul language the deputy was referring to was Mr. Banks's use of the word "shit" to describe what was on the walls of the cells in Unit-T.

[3] Presumably the foul language the deputy was referring to was Mr. Banks's use of the words "shit" and "piss" to describe what was in the cells and showers.

This grievance was, inexplicably, stamped as "non-grievable." *Id*. However, the grievance officer eventually wrote a response that staff would clean the showers and other areas of the unit.[4] *Id*.

Contrary to the allegations in his amended complaint, Mr. Banks acknowledged in a grievance that at some point between February 2, 2019, when he was placed in cell T-322, and March 23, 2019, when he was moved to another cell, he was able to clean cell T-322. *Id. at p. 5*.

On March 23, 2019, Mr. Banks grieved that he was moved into cell T-312, where there was vomit, urine, and feces in the cell. *Doc. 198-3 at p. 7*. On April 1, 2019, the grievance officer responded that the matter was already being addressed. *Id. at p. 8*.

On March 24, 2019, Mr. Banks grieved that cell T-312 contained vomit, urine, and feces, and stated he had not been allowed to clean the cell. *Id. at p. 9*. Again, the grievance officer responded that the matter was being investigated. *Id at p. 10*.

On March 24, 2019, Mr. Banks submitted another grievance that there was vomit, urine, and feces in his new cell. *Id at p. 11*. The grievance officer responded that the issue was sent to the shift supervisor. *Id at p. 12*.

At 8:00 p.m. on the same day, officials discovered water in Mr. Banks' cell. *Doc. 198-5*. Mr. Banks received disciplinary charges for flooding his cell. Mr. Banks

---

[4] The Court cannot decipher the date the response was written.

argued he was only trying to wash the walls with soap and water after the deputies would not allow him to clean the cell. *Doc. 198-3*. After an investigation, officials determined that Mr. Banks purposefully flooded his cell. *Doc. 198-5*.

On March 27, 2019, Mr. Banks grieved that he had been placed in cell T-310, an unsanitary cell that contained spots, stains, and a foul odor. *Doc. 198-3 at p. 13*. He asked for the cell to be cleaned, disinfected, and painted. The grievance officer responded that the matter was being investigated. *Id. at p. 14*.

On April 17, 2019, Mr. Banks grieved that the showers were unsanitary, explaining that there was urine and feces inside the showers. *Id. at p. 25*. The grievance officer told Mr. Banks that issue had been reported to Environmental Services to address and to ensure the showers were being properly cleaned. *Id. at p. 26*.

That same day, Mr. Banks complained that he was moved to cell U-420 and that the cell was covered with hair and drawings. *Id. at p. 27*. The grievance officer responded, "It is unfortunate that there are inmates that mess up things for others herete [sic]. You can clean the walls. Just ask the unit deputy for something to clean with." *Id at. 28*.

On May 3, 2019, Mr. Banks complained he was moved to cell U-304, which had feces on the doors and walls. *Doc. 117-3, p. 28*. Six days later, he was charged with a major disciplinary for flooding cell U-304. *Doc. 117-4, p. 8-12*.

According to the Detention Facility policy, inmates are responsible for cleaning the inmate living areas including their cells, dayrooms, and bathroom facilities. *Docs.* 117-1, 117-5) The policy states that deputies will provide inmates cleaning supplies and materials to assist them in cleaning their housing units and will supervise the inmates to ensure the tasks are being completed. *Id*.

B. **Qualified Immunity**

In response to Mr. Banks' unconstitutional conditions-of-confinement claim, Mr. Waters asserts that he is entitled to qualified immunity.[5] To overcome this defense, Mr. Banks must show that: (1) the supporting facts, viewed in the light most favorable to him, establish a violation of his constitutional rights; and (2) those constitutional rights were clearly established such that a reasonable corrections officer would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); see also *Montoya v. City of Flandreau*, 669 F.3d 867, 872 (8th Cir. 2012). "Qualified immunity is appropriate only if no reasonable factfinder could answer yes to both of these questions." *Nelson v. Corr. Med. Services*, 583 F.3d 522, 528 (8th Cir. 2009). Finally, in applying this standard, the Eighth Circuit has cautioned that "officials are not liable for bad guesses in gray

---

[5] Qualified immunity protects government officials from liability for monetary damages in a § 1983 action unless, at the time of the alleged violation, his or her conduct violated a clearly established federal statutory or constitutional right of which a reasonable person would have known. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741-742 (2011); *Pearson v. Callahan*, 555 U.S. 223, 231-232 (2009).

areas; they are liable for transgressing bright lines." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2001); *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007).

When determining whether Mr. Waters is entitled to qualified immunity, the Court must view the facts in a light most favorable to Mr. Banks. However, "mere allegations which are not supported with specific facts are not enough to withstand [a] motion [for summary judgment]." *Klein v. McGowan,* 198 F.3d 705, 709 (8th Cir. 1999). Nor is the Court required to adopt Mr. Banks' otherwise unsupported version of the facts if they are "blatantly contradicted" by the undisputed evidence. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

### C. Conditions of Confinement

Because Mr. Banks was a pretrial detainee at the time of the alleged constitutional violation, his claims are governed by the Due Process Clause of the Fourteenth Amendment, instead of the Cruel and Unusual Punishment Clause of the Eighth Amendment, which applies to convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 905 (8th Cir. 2020).

7

A pretrial detainee can be held and subjected to conditions and restrictions if they do not amount to punishment, or otherwise violate the constitution. *Stearns*, 957 F.3d at 907 (citing *Bell v. Wolfish*, 441 U.S. at 536-37). The proper inquiry is whether the conditions amount to punishment of the detainee. *Id*. To determine whether the conditions rise to the level of punishment, a plaintiff must show that the conditions were intentionally punitive or not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *Id*.

An inference may be made that the conditions rose to punishment when there was no compelling urgency and other options were available. *Stearns*, 957 F.3d at 907 (citing *Morris v. Zefferi*, 603 F.3d 805, 809 (8th Cir. 2010)). Additionally, "[t]he length of time a prisoner is subjected to harsh conditions is a critical factor in [the] analysis." *Id.* at 909 (quoting *Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996)).

Mr. Banks alleges that he was continually held in unsanitary cells with unsanitary showers from February 2, 2019 until at least May 3, 2019. However, Mr. Banks makes only a passing reference to Mr. Waters when alleging that Mr. Waters and other officers placed him in an unsanitary cell. *Doc. 14 at p. 1*. See *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted). In an affidavit, Mr. Waters contends that he would not have been routinely in contact with Mr. Banks. *Doc. 198-9*.

8

Additionally, he noted that he only recalled being in contact with Mr. Banks once, and that was immediately after he had flooded his cell. *Id.* He asserts that he did not witness any unsanitary conditions, other than the flooding, which the officers cleaned. *Id.* Mr. Banks has not refuted Mr. Waters' statement and has not met proof with proof, which is required at this stage of the case. *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986 (8th Cir. 2016) (a party "is obligated to meet proof with proof at the summary-judgment stage . . . .").

Accordingly, the undisputed facts are that Mr. Waters only contact with Mr. Banks was *after* Mr. Banks flooded his cell and had to be removed so the cell could be cleaned. This action was not intentionally punitive. In fact, there is nothing in the record that would show that Mr. Waters' actions were even arguably unconstitutional.

Mr. Banks also alleges that he was not allowed to clean his cells. However, he does not allege that he asked for supplies to clean his cell but was refused. *White v. Nix*, 7 F.3d 120, 121 (8th Cir.1993) (finding no constitutional violation where a prisoner would have been provided with cleaning supplies if he had requested them). Furthermore, Mr. Banks would have to have alleged that he specifically asked Mr. Waters for those supplies and was refused. There is nothing in the record to support such a finding.

Because there are no material facts in dispute that would allow a reasonable fact finder to conclude that Mr. Waters violated Mr. Banks constitutional rights, Mr. Waters is entitled to judgment as a matter of law.

### III. Conclusion:

For the reasons set out above, Defendant Waters' motion for summary judgment *(Doc. 196)* is GRANTED, judgment is entered in favor of Defendant Antonio Waters, and this case is DISMISSED, with prejudice.

IT IS SO ORDERED this 1st day of October, 2021.

_____
UNITED STATES MAGISTRATE JUDGE